It is submitted to this Court to direct to the discharge of which execution the money arising from the sale, and now in the hands of the coroner, shall be paid.
Executions at common law had relations to their teste, and from that time so bound the property of goods and chattels as against the defendants and all claiming under them, though for a valuable consideration, that they were subject to be taken in execution. 8 Co., 171; Cro. Elizabeth, 174, 440. But it does not so vest the property in the goods as to defeat a sale made of the same goods under another execution. *Page 173 
1 Lord Raymond, 252; 1 Salk., 320; 1 Com., 35. For otherwise, saysLord Holt, no one would purchase at an execution sale. 1 Ld. Raym., 252. Whether such sales were held good at common law for the reasons given by Lord Holt, or whether by the Statute of frauds, as seems to be Ashurst's opinion in Hutchinson v. Johnson,1 Term, 731, is not material in the consideration of the present question. It may be taken for granted that such is the law, and that the injured plaintiff, whose execution had priority and which was postponed by such sale, had a remedy against the sheriff. See Rybot v. Peckham, 1 Term, 731, note. It has been said that because vendees under junior executions were protected, that was proof that executions of the first teste did not completely bind the property in the hands of the defendant. (315) If there had been no other remedy for the plaintiff in the first execution it is more than likely that the lien created by his execution would have been held valid. But it was thought more just and equitable to throw the burden on the sheriff who had done the mischief and make him liable to the creditor he had injured, rather than the innocent vendee under the younger execution, who was in no fault.
But the reason why such sales are held good does not apply to cases where goods have been levied upon but not sold, and perhaps would not apply to cases where sales had taken place and the money was still in the hands of the sheriff; because, although a sale had taken place, and the vendee were not to be disturbed, the money when not paid over might be applied to the discharge of the execution which had the prior right. But this question is not now to be decided, because in the case before us there had been no sale, but only a levy under the execution, which issued from the county court before the execution which issued from the Superior Court came into the hands of the coroner.
In England, by the Stat., 29 Car. II., ch. 3, sec. 16, executions bound the property of goods and chattels only from the time that such writs were delivered to the sheriff to be executed, so that the lien which executions had at common law from their teste upon goods and chattels commenced under that statute from their delivery to the sheriff. And it seems to me that the same law applied at common law, to executions bearing different testes, and that before the statute the delivery to the sheriff did not alter the lien created by the teste any more than since the statute the test will affect the lien created by the delivery to the sheriff.
Supposing, then, the same rule applicable to executions bearing (316) different testes in this State that applies to different deliveries. *Page 174 
of executions under the statute in England, we have authority for saying, from Hutchinson v. Johnson, 1 Term, that the execution first delivered to the sheriff shall be first satisfied, although the property might be first levied upon by an execution subsequently delivered; it follows that, as the statute is not in force in this State, an execution bearing the first teste
ought to be satisfied before one of a younger teste first delivered and levied upon property, but not sold until the one of the first teste comes to the sheriff's hands; for if the property is bound from the teste, it cannot be the more bound from delivery, and the delivery operates nothing. It is true, Lord Holt says in Smallcomb v. Buckingham, 1 Salk., 320, that at common law, if two executions bearing equal teste come to the hands of the sheriff, he is bound to execute that one first that is first delivered. This was not the question before the Court. The question was whether goods sold under an execution could be again sold under another execution which had been first delivered to the sheriff. That dictum of Lord Holt's is differently reported by different reporters. In 1 Ld. Raym., 252, he is made to say "that if a fi. fa. had been sued out the first day of the term, and another fi. fa. afterwards, and the last had been first executed, the other had no remedy but against the sheriff." Comyn, in his 1st vol. 35, reports the dictum thus, "If at common law there are two writs of fierifacias, the one bearing teste on such a day, and the other on the next day, and the last writ was first executed, such execution should not be avoided, and the party had no remedy but against the sheriff." In this report the preference is given on account of the first teste, and nothing is said about a delivery to the sheriff.
But on the point of law involved in this dictum of Lord Holt, so differently reported, we have, by way of explanation, the dictum
of another judge, for I admit that it was not the question then (317) pending for decision before the Court. In King v. Wells, decided in the Exchequer (16 East, 278, note), Baron M'Donald says, "Before the statute of frauds, the subsequent writ of execution of a prior teste would have been preferred to another subject's writ of a subsequent teste although the latter was first delivered to the sheriff and was begun to be executed, provided the writ of prior teste came to the hands of the sheriff before a sale." This position is laid down byM'Donald, in the decision of a case of comparatively recent date, with all the authorities on the subject before him. His meaning on the point cannot be misconceived or mistaken, and it is in words decisive of the present question.
I cannot see the effect that the case of bankruptcy is intended to *Page 175 
produce. I am not aware of any case where the assignees of a bankrupt have been adjudged to be entitled to property taken under an execution before an act of bankruptcy committed. If an execution issues into the hands of a sheriff, but is not levied upon property in the hands of the defendant, and the defendant in the meantime commits an act of bankruptcy, I admit that the lien created by the issuing of the execution is lost, and the assignees of the bankrupt are entitled, because State. 21st Jac. I., ch. 19, secs. 9, 11, expressly declares "that the property in the bankrupt's possession at the time of becoming a bankrupt shall belong to the assignees of his commissioners, whereof there is no extent or execution served or executed
before such time as he shall become bankrupt." 1 Burr., 20. So that the lien created by issuing the execution is expressly destroyed by that statute; but if the property had been seized before the commission of the act of bankruptcy, the creditor in the execution would have the preference.
But laying aside authorities on this subject as contradictory and unsatisfactory, can there by any doubt as to the policy and justice of the case? If an execution of prior teste is held up by the party, or not issued, which is the same thing, and one of posterior (318)teste issues and is executed, there is no injustice in saying that the latter shall have the preference, vigilantibus et nondormientibus leges subveniunt. But when an execution of younger date happens by mere accident to reach the hands of the sheriff before one of an elder teste and is not executed before the other is received by the sheriff, I can see no injustice of inconvenience in giving a preference to the execution bearing the first or eldest tested, qui prior est temporepotior est jure. To adopt a contrary course would be going further, as it seems to me, than protecting those who are laudably vigilant, and would open a door to fraud. The law had better designate the rule by which justice shall be administered, than leave it to the physical ability of creditors or, in other words, give a preference to that execution that the most dispatch is used in first getting into the hands of the sheriff.
For these reasons I think the money in the hands of the coroner arising from the sale of the land should be paid to the plaintiff in the execution which issued from the Superior Court, bearing teste prior to the one under which the property was levied upon that issued from the county court.